**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1215-24

KIMBERLY RODRIGUEZ,

     Plaintiff-Respondent,

v.

RAUL RODRIGUEZ,

     Defendant-Appellant.

_____

> Submitted July 8, 2025 – Decided August 7, 2025
>
> Before Judges Currier and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FM-06-0258-21.
>
> David T. Garnes, LLC, attorney for appellant (David T. Garnes, on the briefs).
>
> Kimberly Rodriguez, respondent pro se.

PER CURIAM

    In this matrimonial dissolution matter, defendant Raul Rodriguez appeals

from the July 30, 2024 pre-judgment Family Part order modifying physical

custody and parenting time, which remained unaltered by the parties' final judgment of divorce (FJOD), entered on November 13, 2024.[1] Defendant contends the court failed to make the requisite findings of changed circumstances or conduct the proper analysis regarding whether the modification was in the best interests of the children. Reviewing these claims in light of the record and applicable law, we affirm.

I.

The parties were married in 2013, and share two children, I.R., born in 2012, and L.R.,[2] born in 2019. Although the parties lived together until May 14, 2021, plaintiff filed a complaint for divorce months earlier based on irreconcilable differences. Both parties sought various pendente lite relief, including, in relevant part, to establish joint custody of the children and a parenting time schedule.

On March 22, 2022, the parties were granted joint legal and physical custody. A parenting time schedule was set, giving each parent either Saturday to Tuesday or Wednesday to Saturday each week, on an alternating basis. The

---

[1] The FJOD followed the parties' "PROPERTY SETTLEMENT AGREEMENT" which memorializes their understanding that defendant "maintain[ed] his rights to challenge" the existing parenting time order.

[2] We use initials to protect the children's identities. See R. 1:38-3(d)(1).

order provided that "[t]he child(ren)'s school will remain as is until further order of the court with neither party permitted to transfer the child or children out of school."

After plaintiff filed an unrelated motion, defendant cross-moved, seeking, in relevant part, modification of the parenting time schedule. Defendant requested "seven days on and seven days off rotating schedule for the children," explaining that "[t]he children become confused on what days they are with each parent." He also asserted that plaintiff "deliberately and intentionally" disobeyed the March 2022 order when she "enroll[ed] [I.R.] in a different school without [defendant's] permission." Plaintiff filed a reply certification, also seeking modification of the arrangement. However, plaintiff did "not agree that alternating the children weekly for visitation . . . [wa]s in the best interest of the children," claiming "the confusion that . . . defendant mention[ed] could be resolved" by designating plaintiff the parent of primary residence, and by placing the children with plaintiff Mondays through Thursdays during the school year. She countered that the parties agreed to the school change, explaining she "communicate[d] with . . . defendant that . . . [I.R.] qualified for a program" at a school within the school district because she believed "it was a better

3

opportunity for [I.R.]," and defendant "agreed prior to [I.R.] being enrolled in th[e] program."

The parties did not dispute the circumstances had changed, and the court conducted a two-day plenary hearing in July 2024. The court commenced the hearing noting the prior motion judge's 2022 parenting time order was entered "without prejudice," explaining this language reflected the "fluid" nature of the prior order leaving the court the opportunity to "take another look at it" without a formal showing of a "change in circumstance."

Both parties testified at the hearing recounting past events related to the children and the parties' discord. Specifically, defendant testified a change was "in the best interest for the kids," and it had become "confusing" for L.R. who repeatedly asked with which parent he would be spending the day. He described I.R. as "withdrawn" and explained his proposed parenting time schedule of alternating weeks "would be a more consistent way for [I.R.] to . . . understand and . . . give [the parties and] . . . the children[] . . . [m]ore time to be able to spend with each other."

Defendant described a contentious relationship with plaintiff, and alleged plaintiff suffered anger issues that impeded their communications. He claimed plaintiff harassed him and disparaged him to the children's doctor. Defendant

4

also testified that he took numerous videos of plaintiff at pick-ups and drop-offs in front of the children to capture plaintiff's demeanor during their interactions. According to defendant, plaintiff questioned him about his past drug use, and inquired whether he used the children's prescriptions for personal use, which defendant denied.

Defendant presented additional witnesses who agreed the parties struggled to communicate regarding parenting time.

Plaintiff testified defendant's negative behavior toward her was impacting the children. Plaintiff expressed concern for the children, who witnessed defendant recording their encounters. She described defendant's unwillingness and inability to communicate or be flexible regarding the children, their activities, or to make any concessions or adjustments to the schedule; all to the detriment of the children. Plaintiff cited generally that defendant refused to allow her to take the children to birthday parties if they fell during defendant's scheduled parenting time. She testified that I.R. "almost . . . fail[ed]" out of the "applied math and science academy," explaining that "ha[d] a lot to do with the back and forth, with the co-parenting" between the parties. She stated, "there have been times where [I.R.] has said, it's difficult. I'm back and forth, back and forth. I forgot homework at Dad's or, . . . I'm here and I'm there."

A-1215-24

Plaintiff introduced numerous written exchanges between the parties evidencing defendant's conduct. In one exchange, defendant informed plaintiff he scheduled a vacation with the children during plaintiff's parenting time, but he refused to "switch weekends" to allow plaintiff to make up for any missed parenting time. Instead, defendant replied, "I regret to inform you that I am unable to accommodate your request to switch weekends due to prior commitments and the support system I have in place, particularly in relation to my work responsibilities. I kindly request that we refrain from further discussion on this matter."

Plaintiff also expressed frustration with defendant's failure to inform plaintiff when the children have extracurricular activities, or his simply not taking them to their baseball games or practices. She recalled specific incidents, such as when she asked defendant if I.R. was attending his baseball game, and defendant responded that "he doesn't need to tell [her] when the[] [children are] going to their games," asking her to stop sending him messages because "it[ was his] parenting time," and instructing her to contact her attorney if she had "an issue." Defendant agreed there were occasions when he did not advise plaintiff regarding changes to scheduling and activities. He admitted he did not always advise plaintiff if he could not take the children to their extracurricular activities

6

because he was working late or felt the children should prioritize their homework.

Plaintiff did not believe defendant's proposed parenting time schedule was "in the best interest [of] the children," explaining that although it may be "more convenient," they each have "different [parenting] roles," and she should not be separated from their children for a full week at a time. She agreed the "non-stop back and forth" caused "stress" for the children. She proposed she be designated the parent of primary residence and exercise parenting time weekly, Mondays through Thursdays, explaining her job was "very flexible," permitting her to work from home and take the children to their scheduled extracurricular activities and finish homework assignments.

At the conclusion of the testimony, the court issued an oral decision, denying defendant's motion for a modification of parenting time and ordering the parties continue to "share joint legal custody of the minor children." However, the court determined, "for the stability of the[] children, [plaintiff would] . . . be designated [the] parent of primary residence," and defendant was designated "the parent of alternate residence," finding "[t]here is too much upheaval[ and] horrible communication." The court acknowledged that although it found both parties unable "to communicate and make decisions"

A-1215-24

together, defendant was principally the root of the disharmony. Thus, the court determined it was in the children's best interests to "entrust[] [plaintiff] with the day-to-day decisions."

The court made detailed credibility findings, concluding defendant's testimony was not credible, as he was "harming the[] children," "teaching the[m] . . . not to trust their mother," and was "not willing to co-parent" because he was putting his own "needs over [his] children's needs." The court expressly stated it would "not hold" defendant's history of drug use against him.

In making its findings, the court cited the instances in which defendant would not communicate with plaintiff. It found defendant "c[ould not] even get [I.R.] to baseball practice and give [plaintiff] a straight answer because it[ was his] time." The court cited to specific communications from defendant, and reasoned defendant was not considering "what might be better for the children," and was instead using the parenting schedule "as a sword, not a shield."

The court considered the statutory best interests factors under N.J.S.A. 9:2-4 by finding: the parties had no ability to agree, communicate, and cooperate; defendant wanted parenting time but, unlike plaintiff, had an unwillingness to share it; the children were physically safe, but the court had "big question[s]" about their "emotional safety"; the children had some "special

needs" but the parties seemed to be "on top of it"; the stability of the respective homes was not a concern beyond defendant's undermining of plaintiff; the children's education was not an issue but needed to be agreed upon; neither parent was unfit; the geographic proximity between the parties did not present an issue; and a disturbing trend had emerged of defendant's exposing the children to his disparaging actions regarding plaintiff.

The court amended the parenting time arrangement giving defendant "parenting time every other weekend beginning Friday at 6:00 p.m. until Sunday at 6:00 p.m., and every Wednesday." The court also encouraged the parties to communicate regarding the children. The court entered a memorializing order on July 30, 2024, adding, "But you guys can agree to anything. You can agree to deviate from the holiday schedule. You can agree to add days, but you're going to have to agree and be nice to one another. Be kind."

Defendant's subsequent motion for leave to appeal was denied. On November 13, 2024, an FJOD was entered, incorporating a marital settlement agreement (MSA),[3] under which defendant preserved his right to appeal the

---

[3] We note defendant's submission on appeal includes a document accompanying the FJOD entitled, "PROPERTY SETTLEMENT AGREEMENT," which appears to be the agreement the parties reference in the FJOD as the MSA.

existing custody and parenting time order. The MSA did not set forth any further custody or parenting time terms.

## II.

On appeal, defendant argues the court erred in modifying the parties' March 22, 2022 custody order without finding a change in circumstances or addressing the appropriate considerations under N.J.S.A. 9:2-4 concerning the best interests of the children.

The scope of our review of Family Part orders is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). We afford substantial deference to the Family Part's findings of fact based on adequate, substantial and credible evidence in the record, understanding the court's special expertise in family matters. Id. at 412-13; MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007). No special deference is accorded to the judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); however,

> we "should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice" or when we determine the court has palpably abused its discretion.
>
> [Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412).]

The court's "primary consideration" in custody and parenting time determinations "is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). A party seeking modification of an existing custody or parenting time order must demonstrate changed circumstances and that the arrangement is no longer in the best interests of the child. Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006). Upon such a showing, "the party is 'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order.'" Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 62-63 (App. Div. 2014)) (internal quotation marks omitted).

N.J.S.A. 9:2-4 governs custody determinations and provides:

> In making an award of custody, the court shall consider but not be limited to the following factors: [(1)] the parents' ability to agree, communicate and cooperate in matters relating to the child; [(2)] the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; [(3)] the interaction and relationship of the child with its parents and siblings; [(4)] the history of domestic violence, if any; [(5)] the safety of the child and the safety of either parent from physical abuse by the other parent; [(6)] the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; [(7)] the needs of the child; [(8)] the stability of the home

11

environment offered; [(9)] the quality and continuity of the child's education; [(10)] the fitness of the parents; [(11)] the geographical proximity of the parents' homes; [(12)] the extent and quality of the time spent with the child prior to or subsequent to the separation; [(13)] the parents' employment responsibilities; and [(14)] the age and number of the children.

Preliminarily, we note that the court's July 30 order was entered pendente lite, and pre-FJOD. A matrimonial pendente lite award is designed to establish temporary arrangements between divorcing parties until full resolution of the issues by final judgment. See Mallamo v. Mallamo, 280 N.J. Super. 8, 12 (App. Div. 1995). Thus, although defendant appeals post-FJOD, we review the court's order in the context in which it was entered—pre-judgment temporary relief. The court made clear that its determination was subject to change upon final judgment or upon an easing of tensions between the parties. Defendant elected to appeal the order, rather than seek modification or alternate agreement in the MSA.

We have considered and reject defendant's claim that the court erred in failing to make adequate findings as to changed circumstances. Defendant requested modification of the existing arrangement as it was negatively impacting and "confusing" the children. Plaintiff responded, concurring the present arrangement was unworkable and no longer in the children's best

12

interests, and also seeking its modification. Thus, the court moved to the next step and held a hearing to assess the best interests of the children after a joint representation by the parties that modification was needed. Having requested a modification, defendant cannot now challenge the court's endeavoring to fashion a revised arrangement.

Regarding the court's best interests determination and order, we again conclude the court did not misuse its discretion in placing primary residence with plaintiff, modifying defendant's visitation to every Wednesday and every other weekend Friday to Sunday evening. The court, with the opportunity to assess both parties as they testified, credited plaintiff's account of the relationship, including defendant's unwillingness to coordinate and communicate regarding the children. It found the parties' communications corroborated plaintiff's description of the contentious situation and reflected defendant's repeated attempts to impede plaintiff's efforts to cooperate as to scheduling and daily decisions for the welfare of the children. The court explained to the parties that custody and parenting-time orders "are meant to be a shield, not a sword," finding defendant was not "putting the children first."

The court methodically considered the statutory factors. It made findings, that the "arrangement . . . [was] not working," which neither party disputed. It

13

found that defendant was "harming the[] children" and "teaching [them] not to trust their mother," by recording plaintiff without her permission during pick-ups and drop-offs. The court determined that defendant was "not willing to co-parent," creating "a substantial risk that the[] children are likely suffering." The court found plaintiff recognized "the kids are suffering," and unlike defendant, "put herself last."

We defer to the trial court's credibility and fact findings after a two-day hearing during which both parties presented detailed testimony. We see no reason to disturb the court's order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1215-24